IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| LINDA McFADDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 04-5085-CV-SW-GAF-SSA |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff filed an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. The claim was denied initially. On April 27, 2004, following a hearing, an administrative law judge (ALJ) rendered a decision in which he found that plaintiff was not under a "disability" as defined in the Social Security Act at any time through the date of the decision. On July 24, 2004, the Appeals Council of the Social Security Administration denied plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

The standard of appellate review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole, and whether the decision was based on legal error. *See Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997) (citing *Clark v. Chater*, 75 F.3d 414, 416 (8th Cir. 1996)); *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996); *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995). Substantial evidence is that evidence which reasonable minds would accept as adequate to support the Commissioner's conclusion. *See Gwathney*, 104 F.3d 1045 (citing *Clark*, 75 F.3d at 416); *William v. Sullivan*, 960 F.2d 86, 89

(8th Cir. 1992). An administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *See Gwathney*, 104 F.3d at 1045 (citing *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)); *Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1986).[1]

Plaintiff argues that the ALJ failed to properly evaluate her subjective complaints of pain in accordance with *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) and Social Security Ruling (SSR) 96-7p, and that he placed too much emphasis on his own observations of plaintiff. Under *Polaski* and SSR 96-7p, in evaluating subjective complaints, the ALJ must consider all evidence relating to a claimant's prior work record, observations by third parties and treating and examining physicians relating to such things as the following: the claimant's daily activities; the duration, frequency and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions. *See Brown v. Chater*, 87 F.3d 963, 965 (8th Cir. 1996) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)); SSR 96-7p. The ALJ must make express credibility determinations and set forth inconsistencies which led to his or her conclusion. *See Hall v. Chater*, 62 F.3d 220, 223 (8th Cir. 1995); *Robinson v. Sullivan*, 956 F.2d 836, 839 (8th Cir. 1992). If an ALJ discredits testimony and explicitly gives good reasons for doing so, the court will defer to the ALJ's judgment unless it is not supported by substantial evidence on the record as a whole. *Robinson*, 956 F.2d at 841.

The record reflects that the ALJ conducted a credibility analysis consistent with the standard for evaluating pain and other subjective complaints set forth in *Polaski*, 20 C.F.R. § 404.1529, and SSR

---

[1] Upon review of the record and applicable authority, defendant's position is found to be controlling. Much of defendant's brief is adopted without quotation noted.

96-7p. The ALJ articulated reasons for discrediting plaintiff's subjective complaints. First, the ALJ noted that plaintiff's self-reported activities of daily living were inconsistent with her allegations of totally debilitating symptomatology. In particular, the ALJ noted that plaintiff testified that she cooks simple meals, performs most chores, including doing the laundry, she listens to books and tapes, and she goes to the grocery store once a week. The ALJ also noted that despite plaintiff's testimony that she could only walk one and one-half blocks, stand for four minutes, and sit for approximately 15 minutes, on a questionnaire dated May 7, 2002, plaintiff reported doing the following activities: preparing and cooking meals; grocery shopping for one and one-half hours to two hours; light house cleaning; reading the newspaper, novels, and the Bible; driving, including driving four to five hours to visit her children two to four times a year, and one hour to the lake; attending church services for two hours on Sundays; occasionally attending fellowship dinners with her Sunday School class; and caring for her dog. As the ALJ pointed out, although long drives to visit and to go boating on the lake and a disability are not necessarily mutually exclusive, plaintiff's decision and ability to go on lengthy automobile trips and boating tends to suggest that her alleged symptoms and limitations may have been overstated; especially in light of her testimony that she could only sit for approximately 15 minutes.

  The ALJ pointed out that although plaintiff claimed that her daily activities were fairly limited, it is difficult to attribute that degree of limitation to her medical condition, as opposed to other reasons, in view of the weak medical evidence and the other facts as discussed infra. The ALJ found plaintiff's activities inconsistent with total disability. Although daily activities alone do not disprove disability, they are a factor to consider in evaluating subjective complaints. *See Wilson v. Chater*, 76 F.3d 238, 241 (8th Cir. 1996) (citations omitted). The inconsistencies between plaintiff's subjective complaints of pain

3

and her daily living patterns diminish her credibility, and the ALJ properly took account of them. *See Clark v. Chater*, 75 F.3d 414, 417 (8th Cir. 1996); *McGinnis v. Chater*, 74 F.3d 873, 875 (8th Cir. 1996); *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995).

The ALJ also discredited the severity of plaintiff's alleged complaints finding the evidence strongly suggests that she exaggerated her symptoms and limitations. The ALJ noted that although plaintiff alleged that she is unable to work due to foot pain and decreased foot strength, on August 22, 2002, Dr. Cole reported that plaintiff had a "normal" gait pattern and was able to heel and toe walk without difficulty. Also, as recent as November 11, 2003, a physical examination by Dr. Komes revealed that plaintiff was able to stand on her toes and heels and do a squat without difficulty, and she was able to walk without braces with normal heel to toe pattern. When evaluating a claimant's alleged disability, an ALJ may consider a claimant's exaggerated responses. *See Brasher v. Celebrezze*, 340 F.2d 413, 418 (8th Cir. 1965); *see also* 20 C.F.R. §§ 404.1527 and 404.927; *O'Donnel v. Barnhart*, 315 F.3d 811, 818 (8th Cir. 2003) ("[A]n ALJ may discount a claimant's allegations if there is evidence that a claimant was a malinger or was exaggerating symptoms for financial gain.").

In discrediting plaintiff, the ALJ also considered the fact that during the hearing, other than standing one time for a few minutes, plaintiff did not betray any evidence of pain or discomfort. Plaintiff contends that by considering the foregoing as a credibility factor, the ALJ subjected her to a "sit and squirm jurisprudence," which is in direct contradiction to Eighth Circuit case law. Contrary to plaintiff's contention, the ALJ merely considered his observations of plaintiff as one of many factors in his credibility analysis. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (finding that while the ALJ is not free to accept or reject the claimant's subjective complaints solely on the basis of

4

personal observations, it is a factor which must be considered). In fact, the ALJ specifically acknowledged that the hearing was short-lived and could not be considered a conclusive indicator of plaintiff's overall level of pain on a day-to-day basis, thus, he only gave "slight" weight to plaintiff's apparent lack of discomfort during the hearing. Furthermore, the ALJ also specifically emphasized that his observation was only one among many factors being relied on in reaching a conclusion regarding plaintiff's credibility.

In evaluating plaintiff's credibility, the ALJ also noted that plaintiff testified that she had difficulty reading, yet she testified that her hobby was reading. Plaintiff takes issue with this finding by the ALJ, claiming that he failed to mention that she needed to listen to her books on audio. While plaintiff did testify that she listens to books on audio, she also testified that her hobby was reading. Even if the ALJ misstated this evidence, any error was harmless because that was only one of many factors the ALJ mentioned in his credibility analysis. An ALJ's misstatement about the facts is harmless error where the appropriate facts were applied in reaching the ultimate legal conclusions, and such legal conclusions are supported by the record. *See Diorio v. Heckler*, 721 F.2d 726, 728 (8th Cir. 1983); *see also Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (the court found that an inappropriate statement did not dictate reversal when there was sufficient medical evidence to support the final conclusion that plaintiff was not disabled). Although there does not appear to be a true inconsistency between plaintiff's testimony regarding reading, the ALJ does correctly note the inconsistency between plaintiff's claim that she is unable to write due to osteoarthritis, and her ability to complete numerous Social Security forms in a very detailed and clear manner without assistance. An ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole. *See Wheeler v. Apfel*, 224 F.3d 891
5

(8th Cir. 2000) (citing *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999)); *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997).

The ALJ also took note of the fact that plaintiff told neurosurgeon Dr. Cole that she would like to follow-up with him every two months, but that there was no evidence showing that she returned to see him after November 19, 2002. While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem. *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

The record also reflects that on multiple occasions, plaintiff reported that she received improvement from treatment. On March 4, 2002, after receiving new orthotics, plaintiff noticed "significant improvement) in her symptoms "immediately." Also, on March 29, 2002, Dr. Esch reported that plaintiff was nearly symptom free when she used anti-inflammatory medications. Additionally, on September 25, 2002, Dr. Esch noted "significant improvement" since plaintiff was injected in her adductor tubercle. He also noted that plaintiff was basically able to walk without a limp. On October 15, 2002, plaintiff told Dr. Kunze that she was extremely happy with her "ankle-foot orthotic" (AFO), and she reported that her knee pain was gone and that her right foot pain was down considerably. Plaintiff returned to Dr. Esch on October 16, 2002, reporting that her knee was feeling "substantially better," and she attributed that to the AFO given to her by Dr. Kunze. Also, on April 2, 2003, Dr. Kunze noted that although plaintiff was still having some pain, her AFO was doing much better than it had previously. When plaintiff returned to Dr. Kunze on April 16, 2003, she reported doing "quite a bit better" with Neurontin, stating that it allowed her to sleep at night, making her life much more bearable and pleasant. Moreover, Dr. Kunze noted that plaintiff's AFO appeared to be fitting well and that she was able to walk much better than she had previously. When plaintiff saw Dr.

6

Kunze again on April 16, 2003, he released her from active care. While plaintiff may not be pain free, the fact that she has received improvement suggests that her pain is not as severe as alleged. Moreover, in an impairment can be controlled by treatment or medication, it cannot be considered disabling. *See Wilson v. Chater*, 76 F.3d 238, 241 (8th Cir. 1996); *Clark v. Chater*, 75 F.3d 414, 417 (8th Cir. 1996).

The ALJ also noted that plaintiff had not been prescribed pain modalities like a TENS unit, and that she had never been referred to a pain management clinic notwithstanding her complaints of debilitating pain; instead, it was recommended that she do stretching exercises, and she was referred to physical therapy, but the record does not show that she ever attended physical therapy. Allegations of disabling pain may be properly discounted because of inconsistencies such as minimal or conservative medical treatment. *See Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994); *Loving v. Secretary of Health and Human Services*, 16 F.3d 967, 970 (8th Cir. 1994).

The ALJ noted that the clinical and objective findings were inconsistent with plaintiff's allegations of total disability. February 1, 2002 knee x-rays showed no destructive, degenerative, or traumatic lesions, and the patella was well centralized and the bony structures were well maintained. An examination by Dr. Esch from the same date revealed full extension, full flexion, moderate discomfort with patellofemoral ballottement, and tenderness underneath the medial facets of the patella, but no obvious instability or apprehension, or joint line tenderness. Right and left foot and ankle x-rays from July 2, 2002 were normal. On August 8, 2002, Dr. Doughtery ordered x-rays and MRI scans of plaintiff's cervical and lumbar spines, which revealed only mild or insignificant changes. Thoracic spine x-rays from August 22, 2002 showed evidence of osteopenia, but there was no evidence of

7

compression fracture and a MRI revealed no evidence of disk bulge or central or lateral recess stenosis. On October 16, 2002, an examination of plaintiff's knees revealed no swelling, tenderness, and no restriction of motion. Also, her gait with the AFO was satisfactory.

Finally, on November 21, 2003, a physical examination by Dr. Komes revealed the following: normal strength in shoulder flexors, elbow flexors and extensors, wrist flexors and extensors, hip flexors, knee flexors and extensors, and ankle dorsi and plantar flexors; no deficits to pinprick in the lower extremities; she was able to stand on heels and toes and squat without difficulty; she could oppose all fingers, make a fist, and extend her hands without difficulty; 60 pound grip strength on the right hand and 50 pound grip strength on the left; she was able to walk heel to toe without her braces; no evidence of active synovitis in any joint; no knee instability to varus or valgus stress; lumbar spine range of motion - 70 degrees of forward flexion, 30 degrees of side bending to the right and left; and shoulder range of motion-180 degrees flexion and abduction, 90 degrees internal and external rotation. Although an ALJ may not reject a claimant's subjective complaints solely because of lack of objective medical evidence on the record as a whole, the absence of objective medical evidence which supports the degree of severity alleged is a factor to be considered by the ALJ. *See Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (citing *Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996)); *Barrett v. Shalala*, 38 F.3d 1019, 1022 (8th Cir. 1994).

Because the ALJ articulated the inconsistences on which he relied in discrediting plaintiff's testimony regarding her subjective complaints, and because his credibility finding is supported by substantial evidence on the record as a whole, his credibility finding is entitled to be affirmed. *See Pena*

8

*v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996); *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992).

Plaintiff argues that the ALJ improperly rejected the opinions of her treating physicians, Drs. Cole and Kunze. With respect to Dr. Cole, plaintiff contends that his opinion should have been given controlling weight because he was a treating physician and his opinion was supported by objective evidence and was not inconsistent with the other evidence of record. The record does not support plaintiff's contention that Dr. Cole was a treating physician. According to the regulations, a treating physician is one, who among other things, has an ongoing treatment relationship with the plaintiff. *See* 20 C.F.R. § 404.1502. A claimant is considered to have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that the claimant sees or has seen the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. *Id*. As the ALJ pointed out, before securing a medical source statement from Dr. Cole, plaintiff had only seen him on two occasions, namely August 22, 2002 and November 19, 200. Accordingly, Dr. Cole was not a treating physician.

The ALJ was further warranted in affording Dr. Cole's opinion less weight because it was rendered on September 16, 2003, ten months after he last examined plaintiff. The regulations provide that less weight is given to those physicians who see claimants infrequently. *See* 20 C.F.R. § 404.1527(d). The ALJ further discredited Dr. Cole's opinion because his opinion did not accurately reflect the evidence of record and was not supported by the objective medical evidence, including his own treatment records. In particular, the ALJ noted that Dr. Cole himself only prescribed anti-inflammatory medication and stretching, and that Dr. Abu-Libdeh only instructed plaintiff to continue

9

her medications and he prescribed Celebrex and advised her to try chondroitin sulfate or glucosamine, over-the-counter medications, treatment not consistent with the limitations identified by Dr. Cole. As noted previously, allegations of disabling pain may be properly discounted because of inconsistencies such a minimal or conservative medical treatment. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994); *Loving v. Secretary of Health and Human Services*, 16 F.3d 967, 970 (8th Cir. 1994). Moreover, a lack of significant medical restrictions are inconsistent with an allegation of disability. *See Brown v. Chater*, 87 F.3d 963, 965 (8th Cir. 1996). The ALJ was warranted in affording Dr. Cole's opinion minimal weight.

With respect to Dr. Kunze, on September 24, 2003, he completed a Medical Source Statement-Physical, wherein he opined that plaintiff retained the residual functional capacity to do the following: lift and/or carry less than five pounds; stand and/or walk less than one hour in an eight-hour workday; sit one hour in an eight hour workday; no pushing and/or pulling; never climb, stoop, kneel, crouch, or crawl; occasionally balance, reach, handle, finger, and feel; frequently hear and speak; avoid moderate exposure to extreme cold, heat, weather, wetness/humidity, and dust/fumes; avoid any exposure to vibration hazards, and heights; and must frequently lie down or recline in an eight-hour workday.

Although the opinion of a treating physician is accorded a high degree of deference, this deference should be limited if the treating physician's opinion consists only of conclusory statements which are not supported by medically acceptable clinical or diagnostic data. *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996); *Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995); *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994); *see also* 20 C.F.R. § 404.1527. Furthermore, it is the

10

ALJ's function to resolve conflicts among "the various treating and examining physicians." *See Bentley v. Shalala*, 52 F.3d 784, 785 (8th Cir. 1995) (citing *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989)); *see also Jenkins v. Chater*, 76 F.3d 231, 233 (8th Cir. 1996).

The ALJ gave Dr. Kunze's opinion less than controlling weight for several reasons. As with Dr. Cole, the ALJ afforded Dr. Kunze's opinion less weight because his opinion was not supported by the objective medical evidence, including his own treatment notes. In particular, the ALJ noted that the last two records of treatment by Dr. Kunze were on April 2, 2003, when plaintiff reported that her AFO was doing much better, and on April 16, 2003, when plaintiff reported that she was doing much better and that her life was "much more bearable and pleasant," and Dr. Kunze noted that plaintiff's AFO appeared to be fitting well and that she was "able to walk much better than before." April 16, 2003 was also the date that Dr. Kunze dismissed plaintiff from active care. As the ALJ pointed out, Dr. Kunze's stated restrictions are extreme when compared to the foregoing treatment notes of Dr. Kunze. Additionally, as the ALJ pointed out, Dr. Kunze's restrictions are extreme when compared to the objective medical findings discussed previously. Furthermore, as with Dr. Cole, the ALJ also gave Dr. Kunze's opinion less weight because he completed his medical source statement on September 24, 2003, five months after he last saw and evaluated plaintiff.

Although Dr. Komes was a one-time consulting physician, the ALJ afforded his opinion substantial weight, because unlike Dr. Kunze's opinion, Dr. Komes' opinion was consistent with the objective medical evidence and the record as a whole. Social Security Ruling 96-6p provides that the opinion of a consulting physician may be entitled to greater weight than a treating source's medical opinion if the consulting physician's opinion is based on a review of a complete case record that

11

includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source. Although Dr. Komes was not presented with a medical report from a specialist when he rendered his decision, as pointed out by the ALJ, Dr. Komes is himself certified in physical medical and rehabilitation and is a specialist in evaluating impairments. Based on the foregoing, the ALJ was warranted in discrediting Dr. Kunze's opinion and relying on Dr. Komes' opinion.

Plaintiff contends that the ALJ's residual functional capacity (RFC) finding is arbitrary and not supported by substantial evidence in accordance with Social Security Ruling 96-8p because he failed to explain how her severe impairments affected her ability to function. It is the responsibility of the ALJ to determine a plaintiff's residual functional capacity based on all of the relevant evidence including the medical records, observations of treating physicians and others, and the plaintiff's own description of his limitations. *See* 20 C.F.R. §§ 404.1545 and 404.1546; *see also McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003).

The ALJ concluded that plaintiff had the RFC to: lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk two hours in an eight-hour workday; sit unlimited in an eight-hour workday; push and/or pull unlimited; frequently climb, balance, kneel, crouch, crawl, and stoop; and she had no manipulative, communicative, visual, or environmental limitations. The impairments that the ALJ found severe were osteoarthritis and allied disorders and congenital pes planus. Contrary to plaintiff's contention, the fact that the ALJ limited her to lifting and/or carrying 25 to 50 pounds, and standing and/or walking for two hours in an eight-hour workday, accounts for the limitations that would reasonably be associated with plaintiff's severe impairments.

12

Plaintiff also contends that the ALJ incorrectly derived her RFC finding from Dr. Komes, a one-time consulting physician. While the ALJ's RFC finding is consistent with Dr. Komes' findings, a review of the record reveals that consistent with the regulations and Eighth Circuit case law, the ALJ derived his RFC finding from all of the evidence, including plaintiff's daily activities, the inconsistencies in the record, and the findings of the treating physicians, including the lack of objective evidence.

Plaintiff suggests that the ALJ improperly determined that she could return to her past relevant work because he did not provide an analysis of the duties of her past relevant work. In determining whether an individual can return to his or her past relevant work, the ALJ is required to make explicit findings regarding the actual physical and mental demands of a claimant's past work and compare the demands of the past work with the claimant's residual functional capacity. *Salts v. Sullivan*, 958 F.2d 840, 844 (8th Cir. 1992); *Groeper v. Sullivan*, 932 F.2d 1234, 1238 (8th Cir. 1991). In this case, the ALJ made such a finding with the assistance of a vocational expert. Generally, an ALJ is not required to use vocational expert testimony if he or she finds that the plaintiff can return to his or her past relevant work. *See Gaddis v. Chater*, 76 F.3d 893, 896 (8th Cir. 1996); *Barrett v. Chater*, 38 F.3D 1019, 1024 (8th Cir. 1994).

Based on an evaluation of all of the evidence of record, the ALJ concluded that plaintiff had the RFC as described above. According to the Dictionary of Occupational Titles, the vocational expert classified plaintiff's past work as follows: licensed practical nurse-medium, skilled; receptionist-sedentary, semi-skilled; and surgical technician-light, skilled. Based on the vocational expert's response to a hypothetical question presented subsequent to the hearing that contained plaintiff's age, education, past work experience, as described in exhibit 3E, and plaintiff's residual functional capacity,

13

as described above, the ALJ concluded that plaintiff could perform her past relevant work as a receptionist, which was sedentary as performed by plaintiff and as performed in the national economy. Because the demands of plaintiff's past relevant work as a receptionist were not inconsistent with the ALJ's residual functional capacity finding, the ALJ concluded that plaintiff can perform her past relevant work. The ALJ's comparison of plaintiff's past relevant work and her residual functional capacity was adequate.

WHEREFORE, for the reasons stated herein, the Commissioner's decision is affirmed.

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
United States District Court

DATED: April 26, 2005